## JAS. WHELESS *v.* THE SECOND NATIONAL BANK.

CORPORATION. *Liable as individuals.* *When.* In an action against a corporation for maliciously suing out an attachment, the corporation is to be held liable in all cases where an individual would be responsible under similar circumstances.

Cases cited: P. W. & B. R. R. Co. *v.* Quigley, 21 Howard, 209, 210; Humes & Williams *v.* Mayor and Council of Knoxville, 1 Hum., 403; Mayor and Council of Nashville *v.* Brown, 9 Heisk., 1; Ohio Ins. Co. *v.* Merchants' Ins. Co., 11 Hum., 1; Goodspeed *v.* East Haddora Bank, 22 Conn., 530.

---

### FROM DAVIDSON.

Appeal from the Circuit Court. EUGENE CARY, Judge.

H. E. JONES and W. E. COLYAR for Wheless.

EDWARD H. EAST for Second National Bank.

Jas. Wheless *v.* The Second National Bank.

OPINION BY THE COURT.

Wheless, a cotton broker and commission merchant in Nashville, sued the Second National Bank for prosecuting against him an attachment returnable to the Circuit Court of Davidson County, alleging that the same was sued out without sufficient cause, and by gross negligence and maliciously, whereby he was damaged to the amount of one hundred thousand dollars, in his business, credit and reputation.

The cause was tried in the Circuit Court of Davidson, when the Circuit Judge charged the jury that the action could not be maintained, because the defendant was a *corporation*. Under this introduction the jury found for the defendant, and Wheless appealed to this Court.

The only question for our determination is, can an action on the case be maintained against a corporation for suing out an attachment without sufficient cause and maliciously?

It appears from the proof that Wheless was a cotton broker and commission merchant in Nashville, of high standing and in good credit, and that he had carried on much of his financial business through the Second National Bank, and at the time of the issuance of the attachment he had overchecked in that bank to the amount of four or five thousand dollars. Having failed to arrange his account to the satisfaction of the Bank, the Cashier filed his affidavit, alleging that Wheless was about to dispose of

his property, and thereupon procured the issuance of an attachment, which was levied on the cotton and other property in his business house, and the house closed up. In a short time, by consent of the bank, Wheless sold enough of the cotton to satisfy the balance due to the bank and the cost of the suit. It thus appears that this action is not brought on the attachment bond for wrongfully suing out the attachment, but that it is an action on the case, as already stated, for maliciously and without sufficient cause, suing out the attachment and levying on his property.

To maintain this character of action it is essential that the plaintiff show by proof that the original suit was commenced *without sufficient cause and maliciously*. The Circuit Judge so charged, but he went further, and held that a corporation could not be guilty of the kind of malice necessary to support the action.

On this point the Circuit Judge told the jury: "I have been thus explicit to show that the malice required to sustain this action is actual malice, resting in the motives and intention of the defendant, a substantive fact to be proved by the evidence in the case, because I am of opinion it is this fact that defeats the plaintiff's right to an action against this corporation, and because it is this that makes the authorities cited by the plaintiff's counsel and ably sustained in argument, inapplicable to this case, with the exception, perhaps, of the case in 22 Conn. Re-

ports, to be hereafter noticed. In all these cases I think it will be found that malice (where malice is found) was established by implication of law, and that actual malice was not a fact to be proved, or an issue to be tried, and that the real intentions or motives of the party defendant were not material to the action, and where the absurdity of attributing malice to an artificial being (if absurdity it is), was an absurdity of the law, and not of fact, and where no questions arose as to how the defendant did actually feel, and think. But here this corporation stands in an action where the very mind and heart of the defendant have to be looked into, where his motives have to be scanned and judged, and where the jury have to decide as a matter of fact to the very quality of his intentions, where the existence of malice as a matter of fact forms the principle issue to be decided. Now it is an easy matter, perhaps, to pronounce a corporation guilty in a suit for *libel* (comparatively easy, though that has never been done but two or three times), for the law there declares the malice, without reference to the actual feeling or motive of the party. But when we come, as in this action, to inquire seriously as to the real motives of the defendant, as to what it intended, or how it felt, the situation is entirely changed, and we have to say as a matter of fact that the defendant had no motive, for it had no sensible being; it thought no evil, for it had no mind to think; it felt no malice, for it had no heart to feel; and, therefore, we must

decide that this action can not be maintained against this defendant corporation, because it could entertain no actual malice—no malice in fact—without which the action, can not be entertained.˝

This reasoning of the Circuit Judge is supported by respectable authorities, but it results in developing an anomaly in the law which is wholly irreconcilable with its catholic and just administration. By our Code, natural persons and corporations are entitled to like benefits in resorting to the ordinary and extraordinary process provided for the enforcement of their rights. When natural persons resort to such process they are liable to pay damages, whenever they have abused this process by its wrongful or malicious use. But according to the reasoning of the Circuit Judge, if a corporation abuse the same process, wrongfully and maliciously, by which a third party is damaged, such third party is entitled to no recourse against the corporation, however malicious its agents may have been in suing out the process. It results from this reasoning that the law secures rights and exemptions to corporations which are withheld from natural persons. This is wholly inconsistent with the genius and spirit of our State Constitution, which was intended to secure equal and exact justice to all.

The doctrine of the charge rests upon the assumption that a corporation has no soul, and can think no evil; therefore, that it cannot be guilty of actual malice. As an abstract proposition it may be true that the impersonal being called a corporation can, not

entertain malicious motives, or be impelled by malicious purposes, but it must be borne in mind that a *corporation* can maintain its existence and exercise its powers and franchises, only through the agency of natural persons. It would be an abandonment of the well-established principle of *"respondent superior"* to hold that the agents of a corporation, in the discharge of their duties as such, would be guilty of maliciously instituting suits to the damage of third persons, and yet that the corporation should shield itself from the responsibility by relying on its soulless character.

This question is discussed with great clearness and conclusiveness in the libel case of *Philadelphia, Washington and Baltimore R. R. Co.* v. *Quigley,* in 21 Howard, 209, 210. In that case, in answer to the objection "that *no action, ex delicto,* or indictment will lie against a corporation for any misfeasance," the Court say: "But this conclusion would be entirely inconsistent with the legislation and jurisprudence of the States of the Union, relative to artificial persons." . . . "To enable impersonal beings, mere legal entities, which exist only in contemplation of law, to perform corporeal acts, or deal with personal agents, the principle of personal representation has been adopted as a part of their constitution. The powers of a constitution are placed in the hands of a governing body selected by the members, who manage its affairs, and who appoint the agents that exercise its faculties for the accomplishment of the

objects of its being. But these agents may infringe the rights of persons who are unconnected with the corporation, or who are brought into relations of business with it. As a necessary correlative to the principle of the exercise of corporate powers and faculties by legal representatives is, the recognition of a corporate responsibility for the acts of these representatives. With much weariness, and after close and exact scrutiny into the nature of their constitution, have the judicial tribunal determined the legal relations which are established for the corporations by their governing body, and their agents, with the natural persons with whom they are brought into contact or collision. This result of the case is, that for the acts done by the agents of a corporation, either *in contractu,* or *in delicto,* in the course of its business and of their employment, *the corporation* is responsible *as an individual is* responsible under similar circumstances."

The law thus laid down by the Supreme Court is simple, clear and eminently just. It repudiates the highly technical idea that a corporation is exempted from responsibility, or the misfeasances or malfeasances of its governing agents, for the simple reason that the *corporation itself* is soulless and incapable of thinking evil; it discards all distinction between the responsibility of natural persons for their own malicious acts, and that of corporation for similar acts in the due course of their business. This rule has been repeatedly recognized and followed by

this Court, and may now be regarded as the settled law of the State. See the cases of *Humes & Wiliams* v. *Mayor and Council of Knoxville,* 1 Hum., 403; *Ohio Ins. Co.* v. *Merchants' Ins. Co.,* 11 Hum., p. 1; *Mayor and Council of Nashville* v. *Brown,* 9 Heis., 1; See also the case of *Goodspeed* v. *East Haddara Bank,* reported in 22 Conn., p. 530, which is directly in point. It follows that the charge of the Circuit Judge is erroneous, and the judgment below must be reversed.